

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

January 29, 1948

Hon. Fred C. Meridith
County Attorney
Kaufman County
Kaufman, Texas

Opinion No. V-489

Re: Authority of the Commis-
sioners' Court to compel
an Electric Cooperative
to remove its poles from
a proposed right of way.

Dear Mr. Meridith:

Your recent request for an opinion of this De-
partment is substantially as follows:

"We have a problem in Precinct No. 4,
Kaufman County, that is serious, the final
outcome of which will be precedent for the
other precincts in this county. It appears
to be one of interpretation of a franchise
granted by the Commissioners' Court to the
REA local, to wit, Kaufman County Electric
Cooperative, Inc.

"The State Highway Department has de-
signated certain farm to market roads and
highways in this County for improvement
and widening, and by agreement the County
is to furnish the right of way for such
widening purposes. The right of way has
been secured on the particular road in-
volved, same having been donated by the
landowners along the route to the County.
The Cooperative has its poles set along
the existing right of way of the present
road, but such poles are on the new right
of way ground that has been acquired by
the County for the widening of said road.

"Under the franchise granted to the
Cooperative to use the roads of this Coun-
ty for setting poles for its transmission
lines, the County reserved the right to
require the Cooperative to move its poles
at its own expense should it ever become

Hon. Fred C. Meridith, page 2  (V-489)

necessary to move said poles in order to widen the roads. At least, this seemed to be the intention expressed in the reservation in the franchise, according to my interpretation.

"The Commissioner has notified the Cooperative, in accordance with provisions of the franchise, to move its poles from the new right of way. The Cooperative has refused to do so, claiming that the poles are on private right of way easements which the Cooperative obtained from the landowners, and not on public right of way, even though the line runs along the public road."

The pertinent portions of the franchise referred to in your request reads as follows:

"On this the 10th day of January, A.D. 1938, came on to be heard before the Commissioners' Court of Kaufman County, Texas, the application of Kaufman County Electric Cooperative Inc. for the right to use the public roads, highways and other public places of this county for the purpose of constructing, erecting, maintaining and operating electric transmission and distribution lines in it's business of distributing electric light and power, and it appearing to the court that such use will not interfere, obstruct or in anywise impair the use of said public roads, highways or other public places:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Commissioners' Court of this County that Kaufman County Electric Cooperative Inc. its successors and assigns, is hereby authorized, empowered and granted the perpetual right, privilege, franchise and easement to construct, erect, maintain and operate electric transmission and distribution lines and all necessary or usual attachments and appurtenances along, across, over, under and on the streets, lanes, highways, public roads, bridges and other public places in this County.

"In granting to the said Kaufman County Electric Cooperative Inc. a franchise to use the roads of Kaufman County for setting poles for its transmission lines, the County reserves the right to permit the Commissioner of each precinct to direct the place where said poles shall be set in his respective precinct, and should said road ever be widened or for any other reason it shall become necessary to move said poles, same shall be done within thirty days after written notice. Said moving shall be done as directed by said Commissioner and reset in such manner as to be as little in the way of said road as practical and shall be done at no expense to the County." (Emphasis added throughout this opinion)

Article 1435, V. C. S., is as follows:

"Gas, electric current and power corporations shall have power to generate, make and manufacture, transport and sell gas. electric current and power to individuals, the public and municipalities for light, heat, power and other purposes, and to make reasonable charges therefor; to construct, maintain and operate power plants and substations and such machinery, apparatus, pipes, poles, wires, devices and arrangements as may be necessary to operate such lines at and between different points in this State; to own, hold and use such lands, right of way, easements, franchises, buildings and structures as may be necessary for the purpose of such corporation."

Article 1436, V. C. S., provides:

"Such corporation shall have the right and power to enter upon, condemn and appropriate the lands, right of way, easements and property of any person or corporation, and shall have the right to erect its lines over and across any public road, railroad, railroad right of way, interurban railroad, street railroad, canal or stream in this State, any street or alley of any incorporated city or town in this State with the consent and under the direction of the govern-

ing body of such city or town. Such lines
shall be constructed upon suitable poles
in the most approved manner and maintained
at a height above the ground of at least
twenty-two feet; or pipes may be placed
under the ground, as the exigencies of the
case may require."

Generally speaking, a Commissioners' Court may
exercise only those powers specifically designated by
the Constitution and the statutes, or those powers nec-
essarily implied.

You have stated that the original easement was
granted by private landowners and was not upon the es-
tablished right of way of said county, and that in wid-
ening said road at the present time it becomes necessary
to take in this particular territory upon which said
poles are located as additional right of way. Such be-
ing the case it becomes apparent that the county would
be taking private property for public use and therefore
the question of who bears the expense of removing said
poles would turn upon the validity of the franchise
granted by the County of Kaufman to the Kaufman County
Electric Cooperative.

In Opinion No. 0-6791-A, dated October 19,
1945, this Department stated:

"In our Opinions Nos. 0-1805, 0-2442
and 0-5726, this department held that by
virtue of the above Article No. 2351, that
the commissioners' court has no authority
to grant franchises to public utility com-
panies by reason of the fact that Article
1436, supra, by direct legislative grant,
grants to gas, electric current and power
companies the right to erect its lines
over and across any public roads outside
of incorporated cities and towns."

In the case of State ex rel City of Jasper v.
Gulf States Utilities Co., 189 S. W. (2d) 693, the Su-
preme Court of Texas stated:

"The statutes of Texas have clear-
ly defined the powers, prescribed the
duties, and imposed the liabilities of
the commissioners' court, the medium

through which the different counties act,
and from those statutes must come all the
authority vested in the counties. . . .
Looking to the powers granted by the leg-
islature by virtue of the above constitu-
tional provision, we find that no authority
is given the commissioners' court to enter
into such contracts as the one sued on in
this case . . . .

"Nor does a commissioners' court have
implied power to grant such franchise . . .

"Since the commissioners' court of
Jasper County was without power to grant
the rights claimed by respondent the pur-
ported franchise and extensions thereof
are of no force and effect as against the
city's procedure under its ordinance. . ."

In Opinion No. 0-7026, dated June 22, 1946, a
copy of which is enclosed, this Department stated:

"First, we think there is no doubt but
that the county may lawfully acquire the
needed strip for the purposes of the Farm-
to-Market road.  (Chicago R. I. & G. Ry. Co.
v. Tarrant County Water Control District,
73 S. W. (2) 55; 16 Tex. Jur. p. 595 Sec. 28,
and authorities there cited.)  It may acquire
that strip in either of two ways:

"(a)  By condemnation, to which proceed-
ing the REA is a necessary party;
or,

"(b)  By agreement of parties upon any
consideration valuable and satis-
factory.

"In case of condemnation, of course, for
constitutional reasons the property of the
REA may not be taken without adequate compen-
sation to be determined under the ordinary
rules of condemnation proceedings.  In the
nature of things the damages recovered by
the REA would include the element of remov-
ing their poles and equipment therefrom,
and re-installing it elsewhere.  So, also,

in the event of purchase, the same element would enter into the agreement.  In either event, the county will have notionally paid for such removal as a part of the damages upon condmenation or purchase agreement."

By virtue of the foregoing it is the opinion of this Department that if it becomes necessary to remove the poles of the Kaufman County Electric Cooperative Inc. to widen farm-to-market roads, the County would be liable for such expense.  Since the County had no authority to grant the franchise in question, the provisions therein are unenforceable.

The delay in forwarding this opinion was occasioned by the fact that this Department was awaiting the decision of the Supreme Court of Texas on a second motion for rehearing in the case of Hempstead v. Gulf States Utilities Company, which was overruled on December 31, 1947, and as yet unreported, and which could have affected the question presented in your factual situation.

### SUMMARY

The Commissioners' Court of Kaufman County has no authority to compel the Kaufman County Electric Cooperative Inc. to pay the expense of removing its poles from a private easement on adjoining lands to enable the County to widen a farm-to-market road.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By  Burnell Waldrep
      Assistant

APPROVED:

ATTORNEY GENERAL
BW:mw
Encl.